UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ANTHONY BROWN<br>1350 Timberland Dr.<br>Cincinnati, OH 45215<br><br>　　　　Plaintiff,<br><br>　v.<br><br>VILLAGE OF WOODLAWN<br>c/o Mayor Brian K. Poole<br>10141 Woodlawn Blvd.<br>Woodlawn, OH 45215<br><br>　　　　Defendant. | Case No.: 1:23-cv-00089<br><br>Judge:<br><br><br>**COMPLAINT WITH JURY DEMAND**<br>**ENDORSED HEREON** |

## PARTIES

1. Plaintiff Anthony Brown is a resident and citizen of the State of Ohio.

2. Defendant Village of Woodlawn, Ohio ("the Village") is a municipal corporation in Hamilton County, Ohio.

3. Defendant is an employer within the meaning of federal and state law.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to hear to this case pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States. Plaintiff's Counts I and VII arise under the American with Disabilities Act as amended (ADAAA), 42 U.S.C. § 12101 et. seq. Plaintiff's Count III and VII arise under Title VII of the Civil Rights Act of 1964 as amended. Plaintiff's Counts V and VII arise under the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. § 621 et. seq.

5. This Court has supplemental jurisdiction over the remaining Counts pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims, over which the Court has jurisdiction, that they form part of the same case or controversy.

6. Venue is proper in the Southern District of Ohio, Western Division, pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in this division and district.

7. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") under its worksharing agreement with the Ohio Civil Rights Commission. He filed that Charge on May 25, 2022, less than 300 days after his constructive discharge. The Equal Employment Opportunity Commission ("EEOC") issued to Plaintiff a Notice of Right to Sue on November 17, 2022 and this Complaint was filed within 90 days of the receipt of the Notice.

## FACTUAL ALLEGATIONS

8. Plaintiff Anthony Brown was born in 1963.

9. Plaintiff suffers from a hearing impairment, a real and/or perceived disability.

10. Plaintiff was employed with Defendant for nearly 13 years, from April 2009 until his constructive discharge effective January 6, 2022.

11. Plaintiff held the position of Director of Public Works.

12. Plaintiff was a loyal and dedicated employee.

13. Plaintiff was fully qualified for his position at all relevant times.

14. Plaintiff struggles with phone conversations because his hearing impairment makes it difficult to hear through the telephone. Plaintiff also has trouble hearing during regular conversations and sometimes raises his voice due to his hearing impairment.

15. Plaintiff was experiencing repeated problems of insubordination, abuse of sick time, and disrespect towards other employees in the department, from a female employee, Elissa Fourth, whom he supervised.

16. At the time of the events outlined in this Complaint, Ms. Fourth's brother, Donald Fourth, was the Assistant Police Chief for the Village. He has since been terminated by the Village.

17. Plaintiff was on vacation in late October, 2021. Towards the end of his vacation, Plaintiff learned from Terry Calhoun, the employee who manages day-to-day operations in the Department and who had been left in charge of the Department by Plaintiff, that while Plaintiff had been on vacation, Ms. Fourth had reported to work approximately 15-30 minutes late each day without notifying Mr. Calhoun ahead of time, as required by Village policy. Mr. Calhoun indicated to Plaintiff that he believed Ms. Fourth had made arrangements with Plaintiff to adjust her start time.

**The October 14, 2021 incident**

18. On or about October 14, 2021, Mr. Brown was speaking to another Village employee whom he supervises, Donald Crawford regarding issues with Mr. Crawford's and Ms. Fourth's time entries in the Village's new payroll system, which needed to be corrected. Ms. Fourth was nearby and, overhearing the conversation between Mr. Brown and Mr. Fourth, she approached Mr. Brown aggressively and stated to him "you fucking people got all these letters behind your names and don't know what the fuck you're doing."

19. Mr. Brown, who was Ms. Fourth's supervisor, warned Ms. Fourth to watch her language and to change her tone of voice, but Ms. Fourth continued to be disrespectful, including extending her arm and hand toward Mr. Brown in a "talk to the hand" gesture, while stating, "I don't want to hear your shit", and then walking away from Mr. Brown.

20. Mr. Brown instructed Ms. Fourth to report to the Village Manager's office and he would meet her there.

21. When Mr. Brown arrived at the Village Manager's office, the acting Village Manager, Mr. Engel, was not available. Ms. Fourth's brother, the Assistant Police Chief for the Village, informed Mr. Brown that Engel had left for the day.

22. The next day, Mr. Brown personally reported Ms. Fourth's behavior to Mr. Engel, as insubordination, and requested that Mr. Engel meet with Ms. Fourth and Mr. Brown to address Ms. Fourth's conduct. Mr. Engel did not agree to such a meeting.

23. Instead, the Village appears to have conducted an investigation into the incident that was geared toward finding Mr. Brown at fault for his conduct in the incident.

24. The investigation was conducted wholly or in part by Ms. Fourth's brother, former Assistant Police Chief Donald Fourth, despite a clear conflict of interest given that his sister was involved.

25. In the investigation, one independent witness, a Terminix employee who was on the scene, was pressured into providing an account of the incident that was biased against Mr. Brown. Upon information and belief, one of the individuals who contacted the Terminix employee was Donald Fourth. To date, Mr. Brown has not been provided any record of the investigation, including any notes or recording related to the interview of the Terminix employee.

26. The other witness interviewed in the investigation was Mr. Crawford, who is a friend of Ms. Fourth, and who had much to gain if Mr. Brown was terminated. Indeed, after Mr. Brown was terminated, Mr. Crawford was made the Acting Director of the Public Services Department, over another employee with more experience and seniority.

27. As a result of this incident, Mr. Brown was placed on a Performance Improvement Plan ("PIP"). Mr. Brown adamantly disputed the allegations that resulted in the PIP, but was not permitted to address the allegations in his meeting with Mr. Engel and legal counsel for the Village.

28. Mr. Brown was not permitted to submit a written response to the PIP.

**The December 2021 Incident**

29. On or about December 7, 2021 Mr. Brown held a meeting with Elissa Fourth to discuss her tardiness to work and to instruct her to adjust her incorrectly reported times. Another employee, Terry Calhoun, was present in meeting because of Ms. Fourth's history of making allegations against Mr. Brown.

30. In the meeting, Ms. Fourth reported to Mr. Brown that the reason she had taken sick time was to wait with daughter at the bus stop, because it was dark. Mr. Brown showed Ms. Fourth the Village's policy on use of sick time and advised her that using sick time was not appropriate for this purpose. Mr. Brown did permit Ms. Fourth to change her reporting time to 7:00 a.m., until school was out, beginning the following day,

31. The following day, December 8, 2021, Ms. Fourth reported to work at approximately 9:40 a.m. without properly calling in as required by Village policy. Later that day, Ms. Fourth submitted a sick time request, which Mr. Brown denied on the Village's payroll system.

32. At the end of the day, Ms. Fourth called Mr. Brown on his phone, and started yelling, demanding to why Mr. Brown had denied her sick leave request. Mr. Brown reminded Ms. Fourth of their conversation about use of sick time the previous day. Ms. Fourth continued to yell and speak over Mr. Brown, and Mr. Brown informed her that if she refused to allow him to speak, would disconnect the call. When Ms. Fourth continued to yell, Mr. Brown disconnected the call. Shortly after the call ended, Ms. Fourth text messaged Mr. Brown "I got you now."

33. One of the reasons Mr. Brown was unable to continue with the phone call is because he wears hearing aids and has trouble hearing phone conversations when the other person on the conversation is raising their voice.

34. On or about December 9, 2021, the Municipal Manager, Anson Turley, directed Plaintiff to report for a meeting with him and the Finance Director, Tim Engel at 4 p.m. In the meeting, Mr. Brown was informed that Ms. Fourth had accused him of being abusive to her on the phone call the previous day. Mr. Turley and Mr. Engel told Plaintiff that they had interviewed two people, Ms. Fourth and Mr. Crawford, and that was all they needed.

35. On or about December 10, 2021, Plaintiff met with the Municipal Manager, Anson Turley, and the Finance Director, Tim Engel, to discuss the performance of Ms. Fourth. Also in attendance was another employee, Terry Calhoun, who managed day-to-day operations of the Public Works Department and who reported to Plaintiff.

36. Plaintiff advised Mr. Turley and Mr. Engel that Ms. Fourth had repeatedly been disrespectful and insubordinate to Plaintiff, and often behaved erratically.

37. Plaintiff also informed Mr. Turley and Mr. Engel that while he was on vacation in late October 2021, Ms. Fourth had repeatedly reported to work 15-30 minutes late each day without properly notifying her immediate supervisor ahead of time as required by Village policy. Plaintiff reported that when he checked the payroll records, Ms. Fourth had reported her arrival time as earlier than she had actually arrived at work.

38. Plaintiff informed Mr. Turley and Mr. Engel that when he directed Ms. Fourth to correct her time entries, she became irate towards Plaintiff.

39. Plaintiff disputed the allegations against him and asked if Mr. Turley and Mr. Engel whether they had interviewed anyone else. Mr. Turley and Mr. Engel mentioned that another

employee, Donald Crawford, had corroborated Ms. Fourth's account of the telephone conversation.

40. Plaintiff informed Mr. Turley and Mr. Engel of the fact that he had met with Ms. Fourth regarding her abuse of the sick time policy and that Plaintiff believed Ms. Fourth was retaliating against him for correcting her.

41. Plaintiff also disputed Ms. Fourth's account of both the telephone conversation and the October 14, 2021 incident in which Plaintiff approached Ms. Fourth as she walked away from him.

42. In addition, Plaintiff advised Mr. Turley and Mr. Engel that Ms. Fourth had a history of misconduct, including damaging Village property, which Plaintiff intended to address in her performance review. Plaintiff also noted that Ms. Fourth had a history of smoking marijuana on the job.

43. At the end of the meeting, Plaintiff was informed that he was being placed on administrative leave.

44. On December 15, 2021, Plaintiff received notice, taped to his front door, of a disciplinary hearing scheduled for December 31, 2021 at 4 p.m.

45. Plaintiff did not receive a proper investigation from the Defendant.

46. On December 15, 2021, Plaintiff received a notice taped to the door of his residence stating that a disciplinary hearing was scheduled for December 31, 2021.

47. Plaintiff retained legal counsel and the hearing was continued in order for counsel to prepare for the hearing. to discuss policies and shift times.

48. The hearing occurred on December 31, 2021. It was presided over by Mr. Turley. Mr. Engel and legal counsel for the Village were present.

49. Plaintiff was not offered the opportunity to present witnesses on his behalf or to examine the witnesses against him. Plaintiff's attorney was not permitted to elicit testimony from Plaintiff or to argue on Plaintiff's behalf.

50. In the hearing, a video of the incident where Plaintiff allegedly approached Ms. Fourth in an aggressive manner was played, and Plaintiff testified that he did not approach Ms. Fourth in an aggressive manner.

51. Plaintiff again raised the issue that he believed Ms. Fourth was retaliating against him for correcting her on her sick time usage and for previous discipline of her for damaging Village property.

52. Plaintiff testified that Ms. Fourth was known to behave in an aggressive manner herself, was repeatedly insubordinate, and that other witnesses, including the Terminix employee, would corroborate Plaintiff's testimony in this regard.

53. Plaintiff further noted that based on the recording of the interview of the other witness, Donald Crawford, Ms. Fourth's accounts of both events could not be corroborated.

54. Plaintiff requested that the Municipal Manager meet with the HR Rep, Charla Ponder, who would refute Mr. Crawford's accounts of other events alleged in his interview.

55. Additionally, Plaintiff noted that Mr. Crawford had been accused of threatening violence against another employee, Roy Woolfork, in late November 2021, that Mr. Woolfork had met with Mr. Engel regarding the matter, and that there were witnesses to the incident (David DeArmand), but there had been no discipline or even investigation of Mr. Crawford.

56. On January 5, 2022, counsel for the Village notified Plaintiff's attorney that he could either resign or he would be terminated. Counsel for the Village further informed Plaintiff's attorney that Plaintiff had no right of appeal.

57. Plaintiff was constructively discharged on January 6, 2021, when he submitted a letter of resignation under duress.

## COUNT I

### (Disability Discrimination – ADAAA)

58. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

59. Plaintiff was fully qualified for his position at all relevant times.

60. Defendant discriminated against Plaintiff because of his disability, because it perceived him as disabled and/or because of his record of a disability by treating him less favorably than similarly situated non-disabled employees, retaliating against him for requesting leave as a reasonable accommodation for her disability, and terminating his employment on account of his perceived or real disability, or record of disability, in violation of the ADAAA.

61. Defendant's conduct was intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's legal rights.

62. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered injury and damage, and he is entitled to relief.

## COUNT II

### (Disability Discrimination – R.C. Chapter 4112)

63. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

64. Plaintiff was fully qualified for his position at all relevant times.

65. Defendant discriminated against Plaintiff because of his disability, because it perceived him as disabled and/or because of his record of a disability by treating him less favorably than similarly situated non-disabled employees, retaliating against him for requesting leave as a reasonable accommodation for his disability, and terminating his employment on account of his

perceived or real disability, or record of disability, in violation of Ohio Revised Code Chapter 4112.

66. Defendant's conduct was intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's legal rights.

67. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered injury and damage, and he is entitled to relief.

### COUNT III

**(Gender Discrimination – Title VII)**

68. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

69. Plaintiff was fully qualified for her position at all relevant times.

70. Defendant discriminated against Plaintiff because of his gender by treating him less favorably than female employees causing Plaintiff to force his resignation on account of his gender, in violation of Title VII.

71. Defendant's conduct was intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's legal rights.

72. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered injury and damage, and he is entitled to relief.

### COUNT IV

**(Gender Discrimination – R.C. Chapter 4112)**

73. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

74. Plaintiff was fully qualified for her position at all relevant times.

75. Defendant discriminated against Plaintiff because of his gender by treating him less favorable than female employees causing Plaintiff to force his resignation on account of his gender, in violation of Ohio Revised Code Chapter 4112.

76. Defendant's conduct was intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's legal rights.

77. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered injury and damage, and he is entitled to relief.

## COUNT V

### (Age Discrimination – ADEA)

78. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

79. Plaintiff is over 40 years old.

80. Plaintiff was fully qualified for his position at all relevant times.

81. Defendant's conduct is discriminating against Plaintiff includes, but is not limited to, treating him less favorably than similarly situated, significantly younger employees and refusing to hire him on account of his age in violation of the ADEA.

82. Defendant's conduct was intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's legal rights.

83. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered injury and damage, and he is entitled to relief.

## COUNT VI

### (Age Discrimination –R.C. Chapter 4112)

84. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

85. Plaintiff is over 40 years old.

86. Plaintiff was fully qualified for his position at all relevant times.

87. Defendant's conduct in discriminating against Plaintiff includes, but is not limited to, treating her favorably than similarly situated, significantly younger employees and terminating her employment on account of his age in violation of Ohio Revised Code Chapter 4112.

88. Defendant's conduct was intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's legal rights.

89. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered injury and damage, and he is entitled to relief.

## COUNT VII

### (Retaliation – Title VII, ADA, ADEA)

90. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

91. Plaintiff complained to Defendant regarding the discriminatory treatment he was experiencing.

92. Defendant intentionally, willfully, and wantonly retaliated against Plaintiff after he engaged in protective activity, including but not limited to, resignation from the Plaintiff.

93. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages and is entitled to judgment and compensation.

## COUNT VIII

### (Retaliation – R.C. Chapter 4112)

94. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

95. Plaintiff complained to the Defendant regarding the discriminatory treatment he was experiencing.

96. Defendant intentionally, willfully, and wantonly retaliated against Plaintiff after he engaged in protected activity, including but not limited to, resignation from the Plaintiff.

97. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages and is entitled to judgment and compensation under R.C. Chapter 4112.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

(a) The Plaintiff be reinstated to his employment;

(b) The Plaintiff be awarded all lost pay and benefits, and front pay;

(c) The Plaintiff be awarded compensatory damages;

(d) The Plaintiff be awarded liquidated damages;

(e) The Plaintiff be awarded punitive damages;

(f) The Plaintiff be awarded reasonable attorneys' fees and costs;

(g) The Plaintiff be awarded prejudgment and post judgment interest;

(h) That Plaintiff be compensated for the adverse tax consequences of receiving a lump sum award rather than her compensation over several, separate tax years; and

(i) That Plaintiff be awarded all other legal and equitable relief to which she may entitled.

Respectfully submitted,

*/s/ Niroshan M. Wijesooriya*
Niroshan M. Wijesooriya (0079780)
FREKING MYERS & REUL LLC
600 Vine Street, 9th Floor
Cincinnati, OH 45202
(513) 721-1975 Phone
(513) 651-2570 Fax
nwijesooriya@fmr.law

*Attorney for Plaintiff*

## **JURY DEMAND**

Plaintiff herby demands a trial by jury.

/s/ Niroshan M. Wijesooriya